# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DANIEL G. BLACKBURN )<br>    Plaintiff, )<br> )<br>v. )<br> ) CIVIL ACTION NO. 1:20-cv-28-KD-B<br> )<br>THE CITY OF ORANGE BEACH, )<br>    Defendant. ) | |

## ORDER

This matter is before the Court on the City of Orange Beach's Motion for Summary Judgment and dismissal and supporting exhibits (Docs. 45, 46); Daniel Blackburn's Response (Doc. 53); and the City of Orange Beach's Reply (Doc. 55). Also before the Court is Daniel Blackburn's Motion for Summary Judgment and supporting exhibits (Docs. 48, 49) and the City of Orange Beach's Response and supporting exhibits. (Docs. 52, 54).

**I.**     **Background**[1]

Plaintiff Daniel Blackburn's (Blackburn) family owns a large piece of property in the City of Orange Beach (the City). (Doc. 45-1 at 6 (Dep. Blackburn at 22)). This parcel of property originally consisted of 70 acres; it has since been divided into smaller sections which are owned by various members of Blackburn's family. (Id. at 10 ((Dep. Blackburn at 27)). Blackburn owns a 45-acre of unimproved land on the eastern side of the 70-acres. (Id. (Dep. Blackburn at 27)). There are no structures on Blackburn's property. (Id. at 11 (Dep. Blackburn at 29)).

In 2015, Blackburn and his family members, who collectively owned the 70-acre property, applied to the City Council for a subdivision plat; their application was approved. (Id. at 13-14

---

[1] The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

(Dep. Blackburn at 33-34)). Blackburn later hired a surveyor to survey his acreage and the City ultimately approved the subdivision of his parcel. (Id. at 17 (Dep. Blackburn at 37)).

The Blackburn property has always been zoned single-family residential (RS-1) "since the City was incorporated except for two times when it was re-zoned 'PUD' [Planned Unit Development]." (Doc. 45-2 at 3 (Aff. Griffin Powell City Planner)). From 2005 through 2018, Blackburn sought to develop both the larger Blackburn family property and Blackburn's subdivided plat. (Id. at 3-6 (Aff. Griffin Powell City Planner)). Five PUD applications were submitted to the City regarding either the Blackburn family property or Blackburn's specific plat. (Id. at 3-6 (Aff. Griffin Powell City Planner)).

The first PUD application was submitted in 2005 and it sought to develop the entire 70-acre Blackburn family property. (Id. at 3 (Aff. Griffin Powell City Planner)). The Planning Commission, which issues recommendations to the City Council who has final decision-making authority, gave the PUD application an unfavorable recommendation. (Id. at 3 (Aff. Griffin Powell City Planner)). The applicant did not proceed to the City Council for final approval. (Id. at 3 (Aff. Griffin Powell City Planner)).

In 2007, Blackburn submitted a second PUD application for the entire 70-acre property, which sought approval for a different concept called "the Retreat." (Id. at 3 (Aff. Griffin Powell City Planner)). Blackburn received a favorable recommendation for this PUD application and received preliminary major subdivision approval. (Id. at 3 (Aff. Griffin Powell City Planner)). But, Blackburn did not "[come] back for final major subdivision approval." (Id. at 3 (Aff. Griffin Powell City Planner)). In 2009, the PUD expired and the property reverted back to RS-1. (Id. at 3-4 (Aff. Griffin Powell City Planner)). And see (Doc. 45-1 at 18-19 (Dep. Blackburn at 39-40)).

In 2010, Blackburn again sought approval for "the Retreat" with a third PUD application and he received City Council approval. (Doc. 45-2 at 4 (Aff. Griffin Powell City Planner)). No permits were sought to start the project, so in 2011 the PUD expired and the property again reverted to RS-1. (Id. at 4 (Aff. Griffin Powell City Planner)).

Blackburn then subdivided the Blackburn family property (as discussed *supra*), retaining a 45-acre plot. (Id. at 4 (Aff. Griffin Powell City Planner)). In 2017, Blackburn submitted another PUD application. (Id. at 4 (Aff. Griffin Powell City Planner)). The fourth PUD application that Blackburn submitted in 2017 received public opposition and ultimately garnered an unfavorable recommendation from the Planning Commission. (Id. at 4 (Aff. Griffin Powell City Planner)). And see (Doc. 45-3 at 13-14 (minute entry from Planning Commission meeting, including public opposition)). Blackburn was instructed to submit further materials in support of his PUD application, but he did not do so. (Doc. 45-2 at 4-5 (Aff. Griffin Powell City Planner)). Blackburn did not proceed to the City Council for final approval. (Id. at 5 (Aff. Griffin Powell City Planner)).

Blackburn submitted a fifth PUD application in 2018. This application also lacked necessary information. (Id. at 5 (Aff. Griffin Powell City Planner)). Blackburn asked the City to hold his fourth PUD application from 2017 "in abeyance" while he sought approval for the 2018 PUD application. (Id. at 5 (Aff. Griffin Powell City Planner)). The Planning Commission gave an unfavorable recommendation to the 2018 application and Blackburn's son (who was involved in the PUD application process) was notified that supplemental materials were needed for the PUD application. (Id. at 5 (Aff. Griffin Powell City Planner)). "[N]either the 2017 nor the 2018 PUD were ever submitted to the City Council for approval. And Mr. Blackburn never submitted all of the required documentation necessary for PUD approval." (Id. at 6 (Aff. Griffin Powell City Planner)).

On December 15, 2017, the City passed Ordinance 2017-1276 which restricted, for a period of six months, any short term vacation rental licenses in RS-1 neighborhoods. (Doc. 45-3 at 35-36 (Ordinance 2017-1276)). Later, on April 3, 2018, the City passed Ordinance 2018-1282 and Ordinance 2018-1283, which collectively prohibited short-term (defined as fourteen (14) days or less) vacation rental licenses in RS-1 zoned areas. (Doc. 45-3 at 37-44). These ordinances together are referred to *infra* as the "Rental Restrictions."

Also at issue is Ordinance § 5.0601 which subjects Blackburn's property to the following density limitation:

> 5.06 NUMBER OF PRINCIPAL BUILDINGS ON LOT
>
> 5.0601 Number
>
> Only one (1) principal residential building may be erected on any lot located within an RS zoning district. If a lot has a maximum of seventy-five (75) feet of road frontage and at least twenty-six thousand two hundred fifty (26,250) square feet, two (2) principal single-family structures or one (1) principal duplex with conditional use approval in accordance with this Ordinance may be constructed. No lot may have a density to exceed two (2) residential units, single-family or duplex. The number of accessory structures for each residential unit shall comply with Section 5.04 of this Ordinance.

(Doc. 49-8 at 66). Accordingly, Blackburn is limited to two (2) principal residences until and unless he obtains formal subdivision approval from the City. These restrictions are referred to *infra* as the "One-Lot Restrictions."

Blackburn also challenges, on state law grounds only, the prohibition against building a pier and boathouse before a permit is issued for a principal structure. Ordinance 5.0411 states, "[n]o accessory structure shall be constructed upon a lot until the building permit for the principal structure to which it is accessory has been acquired."

4

Blackburn brought this suit against the City, challenging the lawfulness and constitutionality of these ordinances per state and federal law. See generally (Doc. 10 (amended complaint)). The parties filed cross-motions for summary judgment.

In response to the City's motion for summary judgment Blackburn conceded that claims regarding his PUD applications for which he did not pursue City Council determination are not ripe for review. (Doc. 53 at 2). Accordingly, these claims are **DISMISSED**.

## II.   Standard of Review

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. Jean–Baptiste v. Gutierrez, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. Id. Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); see also Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. ... [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."). If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. Celotex, 477 U.S. at 324. A genuine dispute of

5

material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. Waddell v. Valley Forge Dental Assocs., 276 F.3d 1275, 1279 (11th Cir. 2001).

The fact that both parties have filed partial motions for summary judgment does not alter the ordinary standard of review. See Chambers & Co. v. Equitable Life Assurance Soc., 224 F.2d 338, 345 (5th Cir. 1955)[2] (explaining that cross-motions for summary judgment "[do] not warrant the granting of either motion if the record reflects a genuine issue of fact"). Rather, the Court will consider each motion separately "as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." 3D Med. Imaging Sys., LLC v. Visage Imaging, Inc., 228 F. Supp. 3d 1331, 1336 (N.D. Ga. 2017) (quoting Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538–39 (5th Cir. 2004)) (internal quotations omitted). Accord Wilson v. Browne, 2012 WL 1605877, at *2 (N.D. Fla. April 20, 2012).

In some cases, "[c]ross motions for summary judgment may be probative of the nonexistence of a factual dispute." Shook v. United States, 713 F.2d 662, 665 (11th Cir. 1983). But, the existence of cross motions for summary judgment "do[es] not automatically empower the court to dispense with the determination whether questions of material fact exist." Ga. State Conference of NAACP v. Fayette Cty. Bd. of Comm'rs, 775 F.3d 1336, 1345 (11th Cir. 2015) (quoting Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt, 700 F.2d 341, 349 (7th Cir. 1983)) (internal quotations omitted). This is so because "each party moving for summary judgment may do so on different legal theories dependent on different constellations of material facts. Indeed, cross-motions for summary judgment may demonstrate a genuine dispute

---

[2] The Eleventh Circuit, sitting en banc, adopted as binding precedent all decisions rendered by the Fifth Circuit prior to close of business on September 30, 1981. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

as to material facts as often as not." Bricklayers, Masons and Plasterers Intern. Union of America, Local Union No. 15 v. Stuart Plastering Co., 512 F.2d 1017, 1023 (5th Cir. 1975).

**III.     Discussion**

This case involves issues of standing and ripeness; two concepts often confused and at times merge. As explained by the Eleventh Circuit in Elend v. Basham, 471 F.3d 1119, 1204-05 (11th Cir. 2006):

> Standing and ripeness present the threshold jurisdictional question of whether a court may consider the merits of a dispute. *See Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 974 (11th Cir.2005) ("In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims."); *Nat'l Adver. Co. v. City of Miami,* 402 F.3d 1335, 1339 (11th Cir.2005) ("Strict application of the ripeness doctrine prevents federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes."). Both standing and ripeness originate from the Constitution's Article III requirement that the jurisdiction of the federal courts be limited to actual cases and controversies. *Flast v. Cohen,* 392 U.S. 83, 94–101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (discussing the origins of the standing doctrine); *Abbott Labs. v. Gardner,* 387 U.S. 136, 148–149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (discussing the origins of the ripeness doctrine). This jurisdictional limitation "defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded." *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *see also Socialist Workers Party v. Leahy,* 145 F.3d 1240, 1244 (11th Cir.1998).
>
> This case presents an instance of the doctrinal overlap between standing and ripeness analysis…. The distinction traditionally made, however, is that standing deals with which party can appropriately bring suit, while ripeness relates to the timing of the suit. *See id.* at 390. Thus, there may be standing without ripeness, as when a party alleges a concrete injury but has not exhausted prescribed administrative remedies, *see, e.g., Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938); or there may be ripeness without standing, as when an injury is fully formed, but the remedy sought would simply not redress the harm, *see, e.g., Linda R.S. v. Richard D.,* 410 U.S. 614, 617–18, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). There may also be ripeness without standing when an injury is fully formed but the plaintiff simply asserts the claims of third parties. *See, e.g., Whitmore v. Arkansas,* 495 U.S. 149, 151, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). But in cases involving pre-enforcement review, the standing and ripeness inquiries may tend to converge. *See, e.g., Socialist Workers Party,* 145 F.3d at 1244–45; *ACLU v. Fla. Bar,* 999 F.2d 1486, 1490 (11th Cir.1993). This is

because claims for pre-enforcement review involve the possibility of wholly prospective future injury, not a prayer for relief from damages already sustained.

Elend, 471 F.3d at 204–05.

### A. Standing

"It is by now axiomatic that '[i]n every federal case, the party bringing the suit must establish standing to prosecute the action. In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County, 450 F.3d 1295, 1304 (11th Cir. 2006) (citing Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 11 (2004)). The standing threshold "requires federal courts to satisfy themselves that 'the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [its] invocation of federal-court jurisdiction.'" Summers v. Earth Island Inst., 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) (quoting Warth v. Seldin, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Standing focuses "on the party seeking to get his complaint before the federal court rather than 'on the issues he wishes to have adjudicated.'" United States v. Richardson, 418 U.S. 166, 174, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (quoting Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)).

"To establish Article III standing, a plaintiff must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" Tokyo Gwinnett, LLC v. Gwinnett County, Georgia, 940 F.3d 1254, 1262 (11th Cir. 2019) (citing Spokeo, Inc. v. Robins, 578 U.S. ——, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016)). And as the Supreme Court has reiterated, "threatened injury must be certainly impending to constitute injury in fact," and that "[a]llegations of possible future injury" are not sufficient. Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409, 133 S. Ct. 1138,

1147, 185 L. Ed. 2d 264 (2013) (internal citations omitted).

The City contends Blackburn lacks standing to challenge the Rental Restrictions because Blackburn has "no injury-in-fact." (Doc. 46 at 16). Per the City, the Rental Restrictions do not even apply to Blackburn because he has no rental units nor any finite plan to construct rental units. (Id.).

For "injury in fact," Blackburn relies on his contention that the restrictions are illegal, they apply to RS-1 property and his property is currently zoned RS-1. (Doc. 53 at 4). Thus, Blackburn asserts "the City's prohibition on short-term rentals in residential zoning districts has directly injured the Plaintiff, whose property is zoned single-family residential (RS-1)." (Id.).

The Court agrees with the City. Blackburn cannot currently allege an injury in fact as to the Rental Restrictions because he has no housing or even any identified plans to build housing that would be subject to RS-1 rental restrictions. In other words, Blackburn's contention that a possible building endeavor might be subject to the Rental Restriction is not sufficient to establish standing. See Flava Works, Inc. v. City of Miami, Fla., 800 F.Supp.2d 1182, 1187-88 (11th Cir. 2011) (finding plaintiffs did not have standing to challenge the constitutionality of an ordinance that did not apply to them because they could not allege an injury in fact); Voyeur Dorm, L.C. v. City of Tampa, Fla., 2003 WL 23208270, at *1 (11th Cir. 2003) (holding operator of internet website challenging the city's adult business zoning scheme could not allege an injury-in fact because it was not an adult business). See e.g., Tanner Advertising Group, L.L.C. v. Fayette County, GA, 451 F.3d 777, 791 (11th Cir. 2006) (finding plaintiff lacked standing because plaintiff's permit applications did not establish the provision at issue pertained to him). Moreover, Blackburn's current proposed use for his land is for a PUD, and PUD's are not subject to the Rental Restrictions. See generally (Doc. 55 at 1).

9

### B. Ripeness

The City contends Blackburn's claims regarding the One-Lot restrictions are not ripe because Blackburn has not sought variances. (Doc. 46 at 15). The Eleventh Circuit has stated that "[t]he ripeness doctrine involves both jurisdictional limitations imposed by Article III's requirement of a case or controversy and prudential considerations arising from problems of prematurity and abstractness that may present insurmountable obstacles to the exercise of the court's jurisdiction, even though jurisdiction is technically present." Johnson v. Sikes, 730 F.2d 644, 648 (11th Cir. 1984). "The determination of ripeness 'goes to whether the district court ha[s] subject matter jurisdiction to hear the case.'" Digital Properties, Inc. v. City of Plantation, 121 F.3d 586, 591 (11th Cir. 1997) (citing Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.7 (11th Cir. 1989)). And, "it is well established that subject matter jurisdiction cannot be waived or conferred on a court by consent of the parties." Eagerton v. Valuations, Inc., 698 F.2d 1115, 1118 (11th Cir. 1983). In determining whether a case is ripe, a court must specifically consider "(1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." Digital Prop., Inc., 121 F.3d at 589.

The Eleventh Circuit has categorized challenges to a city's refusal to accommodate a property owner's zoning wishes into four groups: "just compensation, due process takings, arbitrary and capricious due process, and equal protection claims." Eide v. Sarasota Cnty., 908 F.2d 716, 720 (11th Cir. 1990), *cert. denied,* 498 U.S. 1120 (1991), *abrogated on other grounds by* Knick v. Township of Scott, Pennsylvania, 139 S.Ct. 2162 (2019). And see Coles v. City of Jacksonville, 769 Fed.Appx. at 854 (11th Cir. 2019) (citing Eide, 908 F.2d 716 approvingly with respect to its ripeness analysis). Each of these categories require a final decision by a municipality

as a prerequisite for a federal suit, for a claim to be ripe.[3] See Coles, 769 Fed.Appx. at 854[4]; Etherton v. City of Rainsville, 2015 WL 6123213, *15 (N.D. Ala. Oct. 19, 2015) (same)); West Flagler Associates, Ltd. v. City of Miami, 407 F.Supp.3d 1291, 1296 (S.D. Fla. 2019) (same). "[I]n order to challenge the [City]'s *application* of the [restrictions] to [Blackburn's] property, [Blackburn] must first demonstrate the [restrictions have] been *applied* to his property." Eide, 908 F.2d at 724 (emphasis in original). See West Flagler Associates, Ltd., 407 F.Supp. at 1296 (citing same)). This finality requirement is because, "zoning is a delicate area where a [municipality]'s power should not be usurped without giving the [municipality] an opportunity to consider concrete facts on the merits prior to a court suit." Coles, 769 Fed.Appx. at 854 (citing Eide, 908 F.2d at 726 n.17). Similarly, "[a] regulatory takings claim is not ripe until the government has reached a final decision on the challenged regulation." DM Arbor Court, Limited v. City of Houston, 988 F.3d 215, 218 (5th Cir. 2021) (citing Williamson Cnty. Reg'l Plan Comm'n v. Hamilton Bank of

---

[3] An exception to the finality requirement exists where it would be futile for the plaintiff to pursue a final decision. Coles v. City of Jacksonville, 769 Fed.Appx. 851, 854 (11th Cir. 2019) (citing Strickland v. Alderman, 74 F.3d 260, 265 (11th Cir. 1996)). It is Blackburn's burden to show this exception applies. Id. In his response, Blackburn argues in a footnote that this exception applies to him, contending that for him to "pursue zoning change would be an exercise in futility." (Doc. 49 at 14, n.3). Blackburn alleges "[t]he City has stated publicly on numerous occasions, and has informed Plaintiff, that it will never "up-zone" the Plaintiff's property to allow short-term vacation rental-activity, or to permit higher density than what exists today." (Id.). Blackburn cites no case law nor evidence to support this argument. Nor is the Court convinced the City would have rejected his requests for zoning change. The City never had a chance to review a complete application for Blackburn's 2017 or 2018 PUD applications because Blackburn did not provide the supplemental necessary documentation. See e.g., Coles, 769 Fed.Appx. at 854 ("But the LUZ Committee never had an opportunity to consider a complete application from Coles and the intermediate decisions of the Planning Commission do not show with certainty that the LUZ *855 Committee would have rendered a final decision against Coles."). Compare with Bay Area Remodelers, Inc. v. Manatee County, Fla., 2009 WL 151140, at *3 (M.D. Fla. Jan. 21, 2009) (applying the futility exception where plaintiff showed it attempted to obtain a final decision for more than a year and was allegedly told at one point to cease all further submissions). And, Blackburn did have success obtaining City Council approval in the past and the PUDs expired because of Blackburn's inaction, not because of a City decision. Thus, this exception is inapplicable here.

[4] The Eleventh Circuit in Coles, 769 Fed.Appx. at 854, explained that for due process takings claims, if the municipality's process provides for an appeal to the local authoritative decisionmaker, this too must be pursued before bringing federal suit.

Johnson City, 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), *overruled on other grounds by* Knick v. Township of Scott, 139 S. Ct. 2162, 204 L.Ed.2d 558 (2019)).[5]

As to the One-Lot Restrictions, Blackburn has not sought a variance so he does not have a final decision as to these restrictions which would make his claims ripe. See *e.g.*, West Flagler Associates, Ltd., 407 F.Supp.3d at 1296 (finding plaintiff's claims not ripe where plaintiff had not sought an exception required by the municipality); National Advertising Co. v. City of Miami, 402 F.3d 1335, 1340 (11th Cir. 2005) ("National 'at a minimum…had the obligation to obtain a conclusive response from someone with the knowledge and authority to speak for the City regarding the application of the zoning scheme' to National's permits.") (citations omitted). And see Williamson County, 473 U.S. 172, 188 (1985), *overruled on other grounds by* Knick v. Township of Scott, Pennsylvania, 139 S.Ct. 2162 (2019). Instead, Blackburn "abandoned the [municipal] process in favor of this federal suit." Coles, 769 Fed.Appx. at 854. Blackburn's federal equal protection, federal due process claims and regulatory takings claims are not ripe for review because he lacks a final decision. Accordingly, this Court lacks subject matter jurisdiction to hear Blackburn's federal claims.

C. **State Claims**

Blackburn also asserted state law claims with respect to the validity of the Rental Restrictions, One-Lot Restrictions, and state statutory rights to construct a pier and boathouse. See generally (Doc. 10 (amended complaint)). Because the Court lacks jurisdiction as to Blackburn's federal claims, the Court has no supplemental jurisdiction to hear the state law claims.

---

[5] *Knick* overruled *Williamson County*'s requirement that a property owner first litigate a takings claim in state court. 139 S. Ct. at 2167-68. But it did not alter the requirement for a final decision from the regulator before any litigation is commenced. *Id.* at 2169 ("[T]he developer [in *Williamson County*] still had an opportunity to seek a variance from the appeals board, so any taking was therefore not yet final. ... Knick does not question the validity of this finality requirement, which is not at issue here."); *see also* Campbell v. United States, 932 F.3d 1331, 1340 n.5 (Fed. Cir. 2019) (noting that the finality requirement "of *Williamson* remains good law under *Knick*").

**IV.**     **Conclusion**

For the reasons discussed herein, Defendant the City of Orange Beach's motion to dismiss the federal claims for lack of jurisdiction (Doc. 46) is **GRANTED** as to all claims**;** Plaintiff Blackburn's motion for summary (Doc. 48) is **DENIED**.  The clerk is directed to remand the remaining state law claims to the Circuit Court of Baldwin County.

**DONE** and **ORDERED** this the **21st day** of **April 2021**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**